# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNIFER TURNER, | : | Case No. 3:17-cv-00142 |
| Plaintiff, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

The Social Security Administration denied Plaintiff Jennifer Turner's applications for Disability Insurance Benefits and Supplemental Security Income. She brings the present case challenging those denials and asserting she is under a work-precluding disability due to pain in many areas of her body—mainly in her feet, ankles, knees, hips, shoulders, hands, back, and neck. Her challenges focus on the decision by Social Security Administrative Law Judge Mark Hockensmith who found that she was not under a disability because, in large part, she could still perform a limited range of sedentary work with some limitations. Plaintiff contends that ALJ Hockensmith failed to properly evaluate her pain and the opinions of various physicians.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff was forty years old—a "younger" person—on the date she alleges she became disabled (April 19, 2012).  *See* 20 C.F.R. § 404.1563(c).  She has at least a high-school education, and she worked over the years as a home health attendant.

During a hearing held by ALJ Hockensmith, Plaintiff's counsel explained that Plaintiff had been diagnosed at age sixteen with juvenile rheumatoid arthritis.  Counsel pointed out that the state agency's initial review of Plaintiff's record found her limited to sedentary work with additional limitations on her ability to use her hands.

Plaintiff testified during the hearing that she is married and has one minor-age child and two adult-age children.  She is five feet tall and weighed 293 pounds.  She has difficulty climbing and descending stairs because her knees feel like they want to give out, and they "pop."  (Doc. #6, *PageID* #94).  Her last work, as a home health attendant, ended in June 2014 because she could no longer get on her knees as her job duties required.  She could not scrub a bathtub and had trouble helping people into the bathtub.  She could not take the trash out of one man's home because it required climbing a steep hill.  She could not get up the hill due to pain; "it was hurting so bad," she noted.  *Id*. at 97.  After working during the day, she would swell up, particularly if she had done a lot of cleaning.  Her pain felt worse in her shoulders, hands, feet, and legs than other areas of her body.  She has pain each day always at the level of eight on a one to ten scale.  She also gets very swollen.  Describing her swelling, she said, "I feel like I have elephant feet."  *Id*. at 100.

Plaintiff also told the ALJ, "Once I get up and start moving, the pain—that pain does not stop [for] at least a good three or four hours…."  *Id*.  Her pain in the morning is in her feet and ankles, and she cannot bend her feet.  The pain in her ankles and feet continues

2

throughout the day. *Id*. at 102. Plaintiff has back pain that never goes away. Her hands are swelled in the morning, and she cannot do much with them until the swelling goes down. But, even just holding a phone will cause them to swell again. *Id*. at 102. She also explained, "I don't think there is anything I can't do with my hands, but I … cannot do it for long periods of time." *Id*. at 103.

Plaintiff's shoulders are always sore and she cannot touch them. When she uses her arms a lot during the day, "they will burn." *Id*. at 101. "It's like a sting," she says, and she can't raise her arms above her head. *Id*.

Things she manages to do around the house include washing dishes and light housecleaning, as long as she takes breaks because the work requires standing. Her daughter helps with housework. Plaintiff cannot wash pans—they are too heavy for her hands to tolerate. She is able to vacuum two rooms, but it causes her a lot of shoulder pain—a "stinging, burning pain." *Id*. at 104.

Plaintiff experiences bad days and good days. During a bad day, she will sometimes go to bed because her arms hurt so bad. Her ankles sting and burn and feel feels like they're just going to break" with every step she takes. *Id*. at 109. Bad days happen four days per week. On a good day, her pain level would be in the five range all day. *Id*. Her treating rheumatologist Dr. Candice Flaugher told her to get a cane because she had fallen a couple of times when her knees and ankles gave out. Dr. Flaugher told her to use the cane on days when her ankles feel weak. Dr. Flaugher also instructed her to take the cane with her when she was going to a place that might have steps. *Id*. at 113.

Plaintiff explained that she has experienced her problems with pain since age sixteen

3

and it was just getting worse, particularly her shoulders, hand, feet, and ankles. *Id*. at 111-12.

The parties rely on the ALJ's factual summary, highlighting the particular evidence that is presently at issue. Those highlights, in part, reveal the following about Plaintiff's medical records.

Dr. Flaugher's treatment records document that Plaintiff had severe and persistent pain throughout her body. Examination revealed small Heberden's and Bouchard's nodes on Plaintiff's right and left hands. *Id*. at 381, 386, 530, 535. She had these nodes on March 18, 2013 when Dr. Flaugher also observed "normal range of motion, muscle strength, and stability in all extremities with not pain on inspection." *Id*. at 386, 535.
Such nodes result from osteoarthritis and/or degenerative joint disease. *See* Taber's Cyclopedic Medical Dictionary at 268, 904 (19th ed. 2001). Plaintiff also had positive crepitus, a cracking sound, in both her knees. *See id*. at 482.

In July 2014, Dr. Omita Oza examined Plaintiff at at the request of the state agency. (Doc. #6, *PageID* #s 451-57). Upon physical examination, Dr. Oza observed that Turner's fingers were somewhat swollen, but no discrete synovitis. The range of motion in Plaintiff's hips, shoulders, and knees was reduced because of her size (on that day, she measured five feet tall and weighed 290 pounds). *Id*. at 455-56. She displayed full range of motion in her wrists and elbows. Dr. Oza found "very minimal tenderness on palpation of lower spine." *Id*. Plaintiff had flatfeet but walked without favoring any particular lower extremity. *Id*. Dr. Oza diagnosed osteoarthritis secondary to obesity and history of seronegative polyarthropathy. *Id*. And, based on the examination, Dr. Oza opined that

Plaintiff's "physical examination is much better than the symptoms described and she should be able to do sedentary work with change in position every 15 minutes and nothing repetitive with her hands like answering phone calls with a speaker phone, etc." *Id*.

On June 30, 2015, Dr. Michael Atwell—another rheumatologist practicing with Dr. Flaugher (at the Richmond Rheumatology Center)—briefly documented the history of Plaintiff's rheumatoid arthritis. He wrote, "Severity level 4. Location of the pain is bilateral ankle. The patient describes the discomfort as achy. It occurs occasionally. The problem is stable. Symptom is aggravated by walking. She is experiencing morning stiffness for 2 hours…. Pertinent negatives include abdominal pain, anorexia, eye symptoms, fatigue, joint swelling, rash and weakness. Additional information: [She] [h]as been using the Wii Fit. Pain in ankles." *Id*. at 509.

Dr. Flaugher saw Plaintiff in October 2015 and assessed her with rheumatoid arthritis involving multiple sites. Her "Impression" noted that Plaintiff cannot stoop or kneel; cannot sit for longer than thirty minutes before getting up and moving around; cannot stand or walk for more than fifteen minutes at a time. Dr. Flaugher further believed that Plaintiff must lie down for fifteen to twenty minutes every one to two hours throughout the day, and "[s]he is unreliable to work d/t [due to] intermittent flares." *Id*. at 569. Plaintiff also experienced problems with concentration and brain fog. *Id*.

Plaintiff's longtime treating physician Dr. Scott R. Vosler indicated that Plaintiff's pain, on various occasions, was in her hips, shoulders, back, elbow, left leg, and feet along with clinical findings such as swelling, stiffness, tenderness to palpation, antalgic gait, and reduced range of motion in her legs. *Id*. at 408-49, 460-81, 563, 565, 578. Dr. Vosler's

5

checkmarks on a form in January 2015 reported that, in his opinion, (1) Plaintiff is unable to perform any employment or training activities for more than twelve months; (2) she should apply for social security disability benefits, and (3) she would not benefit from Bureau of Vocational Services. *Id*. at 507. Dr. Vosler provided no explanation for his opinions and did not refer to any medical signs or symptoms in support of his opinions.

Turning to ALJ Hockensmith's decision, he concluded that Plaintiff was not under a disability by conducting the 5-step evaluation required by social security law. *See* 20 C.F.R. § 404.1520(a)(4). His more significant findings began with his conclusion that Plaintiff had several severe impairments—osteoarthritis, inflammatory arthritis, and obesity—but her impairments did not automatically constitute a disability.[2] (Doc. #6, *PageID* #s 71-74).

He next assessed Plaintiff's residual functional capacity or the most she could do despite her impairments. *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). He found that despite Plaintiff's impairments she could still perform sedentary work with some limitations, including:

> (1) no ladders, ropes, or scaffolds; (2) occasional ramps/stairs; (3) occasional balancing, stooping, kneeling; (4) no crouching or crawling; (5) frequent handling and fingering bilaterally; (6) frequent overhead reaching bilaterally; (7) avoid concentrated exposure to extreme heat and cold, wetness, and humidity; and (8) no work at unprotected heights.

(Doc. #6, *PageID* #74). With these limitations in mind, the ALJ concluded that Plaintiff could not perform her past work as a home health attendant.

The ALJ then determined that, given Plaintiff's residual functional capacity, high-

---

[2] A social security applicant with a condition meeting or equaling an impairment described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, is automatically under a disability. *See* 20 C.F.R. §404.920(a)(iii); *see also Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

6

school education, work experience, and age, she could still perform a significant number of jobs available to her in the national economy. Her ability to perform those jobs meant she was not under a benefits-qualifying disability. *Id*. at 188-89.

The present review of ALJ Hockensmith's decision determines whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If he failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). A conclusion is supported by substantial evidence when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Plaintiff faults ALJ Hockensmith's evaluation of the medical and opinion evidence provided by her longtime treating rheumatologist Dr. Flaugher; by consulting examiner, Dr. Oza; and by longtime treating physician Dr. Vosler. She reasons that the ALJ improperly relied on the combination of his own lay opinion of medical evidence and the opinions of record-reviewing state agency physicians, who did not review the substantial evidence in the record, including treatment notes and treating source opinions.

Social Security Regulations require ALJs to adhere to certain standards when

weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating medical source's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d 541, 544 (6th Cir. 2004)); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting, in part, 20 C.F.R. § 404.1527(d)(2)).

Plaintiff argues that the ALJ erred by rejecting Dr. Oza's opinion that Plaintiff could perform only sedentary work with a change in position every fifteen minutes. The error appears, according to Plaintiff, in the ALJ's failure provided reasoning and evidentiary support for her conclusion that Dr. Oza's examination findings do not support a need for a sit/stand option. Contrary to Plaintiff's contention, the ALJ relied on Dr. Oza's examination findings and his impression of Plaintiff's presentation at the hearing. (Doc. #6, *PageID* #s

76-77). Substantial evidence supports this aspect of the ALJ's decision. Dr. Oza herself described her examination findings as "much better" than Plaintiff's described symptoms. These "much better" examination findings are readily seen in Dr. Oza's report that Plaintiff had normal range of motion of the cervical spine; very minimal tenderness and mildly reduced range of motion of the lumbar spine; reduced range of motion of the hips and knees due to her size; and she walked without favoring any particular lower extremity and without any ambulatory aids. *Id*. at 76, 451-56). Plaintiff's neurological examination showed intact sensation and full muscle strength bilaterally. *Id*. at 76, 451, 456. In light of such findings, the ALJ had a reasonable evidentiary ground for not adopting Dr. Oza's opinion about Plaintiff's need for a sit/stand option. *See* 20 C.F.R. § 404.1527(c)(3)-(4) (ALJ properly considers supportability and consistency in weighing medical source opinions).

Plaintiff also argues that the ALJ erroneously rejected Dr. Oza's opinion that she was unable to perform work that required repetitive use of her hands. Plaintiff maintains that this limitation was consistent with Dr. Oza's observation that Plaintiff had "somewhat" swollen hands and with Dr. Flaugher's treatment notes that she had Heberden's and Bouchard's nodes on her right and left hands. However, these diagnoses alone do not indicate the level of severity of a condition in any particular individual. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). In addition, the ALJ reasonably considered Plaintiff's statements concerning the difficulty she experiences when using her hands and reasonably determined that the overall record evidence warranted a limitation to frequent handling and fingering adequately accounted for her arthritic condition. *See* Doc. #6, *PageID* #s 74-77. The ALJ accurately recognized that despite Plaintiff's references to her joint swelling and

pain, and despite the findings of small Heberden's and Bouchard's nodes on her hands, Dr. Flaugher's treatment notes documented non-confirming information, particularly examination findings such as "negative for activity limitation, back pain, bone/joint symptoms, muscle weakness, and weakness," *id*. at 385; normal range of motion, muscle strength and stability in all extremities with no edema; mild ankle-joint pain; negative for back pain, joint swelling, muscle weakness, neck pain and weakness; normal neurological examination; and no motor or sensory deficits. *See id*. at 76, 78; *e.g*., *PageID* at 386, 490-91, 494, 511, 516, 521, 523, 526, 529-30, 534-35, 569-73. This is not to say that Plaintiff did not report pain and musculoskeletal symptoms to Dr. Flaugher—she did—or that Plaintiff never was in pain or did not experience swelling or other musculoskeletal problems—she had these problems at times; it is instead to say that Dr. Flaugher's treatment records contains many reports of minimal or negative findings upon examination and, consequently, substantial evidence supporting the ALJ's decision to limit Plaintiff to frequent handling and fingering bilaterally. *See Blakley*, 581 F.3d at 406 ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" (citation omitted)).

Additionally, Dr. Flaugher noted that hand x-rays revealed no evidence of inflammatory arthritis. (Doc. #6, *PageID* #381). March 2013 hand x-rays showed only a small defect of the left fifth metacarpal and no evidence of an erosive arthritis. *Id*. at 399. Such evidence along with other relatively benign objective-test results provide a further reasonable basis for the ALJ's assessment of Plaintiff's residual functional capacity. See id.

at 75 (and evidence cited therein). The ALJ also properly considered that despite Plaintiff's hand swelling, her activities, including, playing cards, texting on her phone, playing computer games, using the Wii Fit, vacuuming, doing dishes, cleaning, driving, and daily smoking, evidenced an ability to use her hands for handling and fingering on a frequent basis. (*Id*. at 76; e.g., 94-95, 103-04, 106-07, 330-334, 378, 384); *see* 20 C.F.R. § 404.1529(c)(3)(i) (activities are a factor considered in evaluating a claimant's allegations); *see also Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 392 (6th Cir. 2004) (same).

In weighing the evidence and assessing Plaintiff's residual functional capacity, the ALJ also considered the opinions of the state agency physicians. (Doc. #6, *PageID* #77). In August 2014 and November 2014, Drs. Steve McKee and James Cacchillo, state agency physicians, considered the available evidence, including Dr. Oza's opinions. They found that Plaintiff could perform a range of light work with standing and/or walking for a total of two hours in a workday and frequent handling and fingering. *Id*. at 125-26, 137-38). D r. Cacchillo further limited Plaintiff to no climbing ladders, ropes, or scaffolds; occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; avoiding concentrated exposure to extreme cold and extreme heat; and avoiding concentrated exposure to hazards and unprotected heights. *Id*. at 138-40. These medical source opinions added to the substantial evidence that supported the ALJ's decision. *See* 20 C.F.R. § 404.1527(e)(2)(i) (an ALJ may rely on the opinions of state agency reviewing medical sources; they are "highly qualified physicians…."). To the extent their opinions and limitations were supported by the record, the ALJ reasonably accorded them "moderate weight" and incorporated them in his findings concerning Plaintiff's residual functional

capacity.  *See* Doc. #6, *PageID* #77.

Plaintiff argues that the ALJ erroneously relied on the opinions of the state agency physicians because they did not have an opportunity to review all the record evidence, specifically the information regarding Plaintiff's foot impairment.  While it is true that Plaintiff submitted additional medical evidence after the state agency physicians reviewed the record, there is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p). Although these doctors did not have access to the entire record at the time they authored their opinions, the ALJ properly considered, discussed, and analyzed more recent evidence in the record, *id*. at 74-78, rather than adopting their opinions wholesale without further evidentiary review. This was not error.  *See McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) ("McGrew also argues that the ALJ improperly relied on the state agency physicians' opinions because they were out of date and did not account for changes in her medical condition.  It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in McGrew's condition.").

Plaintiff contends that the ALJ erroneously rejected Dr. Vosler's opinion because his treatment records support her allegations of disabling symptoms and was not inconsistent with other record evidence.  She therefore concludes that Dr. Vosler's opinion should be given controlling or deferential weight.  However, the ALJ provided good reasons for rejecting Dr. Vosler's opinion.  The ALJ recognized that Dr. Vosler completed a form for

the Ohio Department of Job and Family Services in which he opined that Plaintiff was unable to perform employment and/or training activities for more than twelve months with a release date of January 1, 2016, and that she should apply for Social Security disability benefits. (Doc. #6, *PageID* #s 77, 507). The ALJ reasonably declined to afford Dr. Vosler's opinion great or deferential weight in part because it was conclusory and did not provide any specific information about Plaintiff's functional limitations. These were proper considerations. *See* 20 C.F.R. §404.1527(c) ("The more a medical source presents relevant evidence to support an opinion…, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion."). On its face, moreover, the form contains no substantive details or probative insight into Plaintiff's impairments or work limitations. Substantial evidence therefore supports the ALJ's decision not to credit the opinions in this form.

Similarly, contrary to Plaintiff's assertions, the ALJ reasonably rejected the October 2015 opinions Dr. Flaugher placed in her treatment notes. Although Dr. Flaugher opined that Plaintiff had extreme limitations in her ability to sit, stand, walk, and work, *id*. at 569, the ALJ fairly viewed these extreme limitations as unsupported by the objective signs and findings in the record, by Plaintiff's activities, and appeared to in a paragraph summarizing Plaintiff's own description of her subjective complaints. *See id*. This is seen in the fact that Dr. Flaugher's own treatment notes and examination findings during that office visit showed normal visual overview of all four extremities and identified notations that Plaintiff was positive for pain without identifying the severity level of her pain. *Id*. at 573.

Plaintiff lastly contends that the ALJ erred by not finding that she was required to use

13

a cane and not adding this limitation into the hypothetical questions she posed to the vocational expert during the hearing. The Commissioner correctly counters that this argument is essentially a challenge to the ALJ's assessment of Plaintiff's residual functional capacity. But, Plaintiff's need for a cane was not supported by Dr. Oza's report or Dr. Vosler or Dr. Flaugher's records. Indeed, no physician of record opined that Plaintiff needed to use a cane. The ALJ acknowledged that Plaintiff brought a cane to the hearing. Yet, Plaintiff testified that her physician recommended her to use it when her ankles felt weak rather than requiring her to use it throughout some or all of the day. The ALJ also considered Dr. Oza's report, indicating that, although Plaintiff had reduced hip and knee range of motion, she walked without favoring any particular lower extremity and did not use any ambulatory aids. *Id*. at 76, 456. On examination, Dr. Oza, noted that Plaintiff had normal muscle strength and intact sensory examination. *Id.* at 76, 451, 454, 456.

The record contained other objective evidence and other record evidence that did not support the need for a cane. For example, the ALJ noted that although Plaintiff complained of a limping gait on some occasions, there were other occasions where she had no gait disturbance. *See id*. at 76, 490, 494, 516, 521, 525, 529, 534. And, bilateral feet, knee and hip x-rays posted only mild to moderate findings. *Id*. at 75, 398, 401, 504, 579-80. As such, the ALJ did not err by asking the vocational expert hypothetical questions that did not include a limitation to use of a cane. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

Accordingly, for all the above reasons, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's decision denying Plaintiff's June 3, 2014 and August 29, 2014 applications for benefits be affirmed; and

2. The case be terminated on the docket of this Court.


July 24, 2018                                                *s/Sharon L. Ovington*
                                                             Sharon L. Ovington
                                                             United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).